# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

GLENFORD BUDD,

                              Petitioner,

v.

JEREMY BEAN,[1] *et al.*,

                              Respondents.

Case No. 2:16-cv-00613-RFB-BNW

**ORDER**

Petitioner Glenford Budd, a Nevada prisoner, has filed a counseled second-amended petition for a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 50. Currently before the Court is Respondents' motion to dismiss. ECF No. 79. In their motion, Respondents argue that grounds 5 through 15 of Budd's second-amended petition are procedurally defaulted. Id. For the reasons discussed below, the court grants the motion to dismiss, in part.

I.    **FACTUAL AND PROCEDURAL HISTORY**

In its order affirming Budd's judgment of conviction, the Nevada Supreme Court described the crime, as revealed by the evidence at trial, as follows:

> At trial, Lazon Jones testified that in the hours before midnight on May 26, 2002, he was present in his apartment with his brother Dajon Jones, Derrick Jones (no relation), Jason Moore, and Budd. Budd left for about 15 minutes to buy a drink, then returned to the apartment, said he needed to use the bathroom, and went into the master bedroom where Dajon Jones was, closing the door behind him. Lazon Jones then heard two gunshots and Budd saying, "Where's my stuff at?" He then heard a third gunshot, at which point he fled the apartment and called 911 from a nearby pay telephone. While waiting for police to respond to his location, he saw Budd run across the street with a gun in his hand. He also testified that only himself, Dajon Jones, Derrick Jones, Jason Moore, and Budd were present when the shots

---

[1] The state corrections department's inmate locator page states that Budd is incarcerated at High Desert State Prison. Jeremy Bean is the warden for that facility. At the end of this order, this Court directs the Clerk of Court to substitute Jeremy Bean as a Respondent for Respondent Renee Baker under Federal Rule of Civil Procedure 25(d).

were fired, and that he had seen Budd and Derrick Jones argue about Budd's missing marijuana earlier that day.

Las Vegas Metropolitan Police detectives Patricia Spencer and Michael Wallace were patrolling the apartment complex in a vehicle at the time of the incident. Detective Spencer testified that she heard gunshots, drove toward them, and observed an agitated group of people in front of a staircase leading up to some apartments. They also saw a young man run past their vehicle in his socks. She and Detective Wallace proceeded up the staircase and found Jason Moore, apparently dead from gunshot wounds, on the landing in front of Lazon Jones's apartment. They found Dajon Jones, also dead from gunshot wounds, in one of the bedrooms. Derrick Jones was lying in the hallway, wounded but alive. He was transported for medical treatment but died later from his wounds.

Celeste Palau testified that she was on her balcony when she heard the sound of what she thought were firecrackers coming from Lazon Jones's apartment. She looked in that direction and saw Lazon and a young woman she knew as Chrissy run down the staircase from the apartment. She then saw Budd exit the front door, linger on the landing while firing a weapon three times, then walk down the staircase and away from the area. She did not see anyone else leave the apartment.

Chrissy Smith testified that she was standing on Lazon Jones's apartment landing talking to Jason Moore when she heard shots. Derrick Jones and Lazon Jones then ran from the apartment. She and Lazon Jones ran down the stairs, but Derrick Jones went back inside the apartment.

Crime scene analysts recovered 11 expended cartridges from a 9-millimeter handgun at the scene as well as bullets and bullet fragments. All the cartridges were determined to have been fired by the same weapon. The bullets were also for a 9-millimeter, but analysts could not determine whether they were fired by the same weapon. The murder weapon was never recovered.

The medical examiner testified that Jason Moore sustained three gunshot wounds, one to the back of the head, one to the right neck, and one to the back of the right shoulder. Dajon Jones had two gunshot wounds to the left neck, one fired from about 24 inches away. Derrick Jones had seven gunshot wounds, including wounds to the forehead, ear, back of the left shoulder, right upper back, right hand, and back of the left arm. Four of the shots were fired from behind the victim. All of the victims' blood contained traces of marijuana and no trace of alcohol.

The preliminary hearing testimony of Budd's uncle, Winston Budd, was read into the record. Winston Budd testified that during the two days after the killings, before Budd was arrested, Budd called him and asked him to pick him up from a friend's house and to get some money for him so he could "get out of here." When Winston Budd picked Budd up, he noticed that Budd had cut his hair. Budd also told him that he suspected the victims had robbed him of some marijuana and he had shot them. Winston Budd testified that Budd said he had given the gun back to a friend, but did not name the friend. He advised Budd to turn himself in, but Budd said he "preferred to run."

Greg Lewis, who knew Budd before the killings, was in the same jail housing unit as Budd after Budd's arrest. Lewis testified that Budd told him he shot three people but a fourth had gotten away. Lewis notified homicide detectives of

this information. Several days later, he also gave detectives a letter he had received from Budd in which Budd implicated himself in the killings. Lewis and a detective testified that no promises were made to Lewis to obtain his information or testimony, but the jury was informed that an assistant district attorney wrote a letter to the parole board noting Lewis's cooperation in the investigation.

The detective who questioned Budd after his arrest testified that Budd said he had been in the apartment but fled with Lazon Jones after he heard shots.

ECF No. 27-8 at 3–6.

The jury found Budd guilty of three counts of first-degree murder with the use of a deadly weapon. ECF No. 27-5. For each count of murder, Budd was sentenced to life imprisonment without the possibility of parole. Id. And for each count, under the version of Nev. Rev. Stat. § 193.165 in effect at the time, Budd received a consecutive sentence of life imprisonment without the possibility of parole for the use of a deadly weapon. Id. The state district court ran the sentences for each count consecutively. Id. As such, Budd has six consecutive sentences of life imprisonment without the possibility of parole. Budd appealed, and on January 9, 2007, the Nevada Supreme Court affirmed. ECF No. 27-8.

On September 21, 2007, Budd filed a proper-person post-conviction habeas corpus petition, with a supporting brief, in the state district court. ECF Nos. 28-2, 28-3. The state district court denied the petition without appointing counsel. ECF No. 28-4. Budd appealed, and the Nevada Supreme Court reversed and remanded, determining that the state district court should have appointed counsel. ECF No. 28-7. Budd then filed four counseled supplemental post-conviction habeas corpus petitions. ECF Nos. 28-9, 28-10, 29-2, 29-3. The state district court held an evidentiary hearing. ECF No. 29-4. The state district court then denied the petition. ECF No. 29-5. Budd appealed, and the Nevada Supreme Court affirmed on December 10, 2015. ECF No. 29-8.

Budd filed his counseled second-amended petition before this court on January 23, 2020. ECF No. 50. Respondents filed a motion to dismiss. ECF No. 54. This court granted the motion, in part, finding that grounds 5 through 15 were unexhausted. ECF No. 67. This court then stayed this action to allow Budd to exhaust grounds 14 and 15. Id. This court noted that "nothing will stop Budd also from exhausting grounds 5 through 12." Id.

Budd returned to state court and filed his second proper-person post-conviction habeas corpus petition and then a counseled supplemental petition. ECF Nos. 77-1. 78-1. On January 21, 2022, the state district denied the petition, finding that it was procedurally barred. ECF No. 78-4. Specifically, the state district court found that Budd's petition was time-barred in violation of Nev. Rev. Stat. § 34.726, Budd's petition violated the laches provision in Nev. Rev. Stat. § 34.800, Budd's petition was successive in violation of Nev. Rev. Stat. § 34.810(2), and Budd waived claims by not addressing them on direct appeal pursuant to Nev. Rev. Stat. § 34.810(1)(a)-(b)(2). Id. The state district court then determined that Budd failed to establish good cause or prejudice to overcome the state procedural bars. Id. Budd filed a notice of appeal on April 1, 2022. ECF No. 78-8. On April 18, 2022, the Nevada Supreme Court dismissed the appeal because it was untimely pursuant to Nev. Rev. Stat. § 34.575 and Rule 4(b) of the Nevada Rules of Appellate Procedure. ECF No. 78-12.

This case was reopened on October 12, 2022. ECF No. 70. Respondents filed a new motion to dismiss on May 23, 2023. ECF No. 79. Budd responded, and Respondents replied. ECF Nos. 83, 87.

In his second-amended petition, Budd alleges the following grounds for relief:

1.      There was insufficient evidence to support his convictions.
2.      His trial counsel was ineffective for failing to adequately prepare for trial or retain expert defense witnesses, failed to provide a defense on premeditation, failed to adequately subject the State's case to the adversarial

process, and failed to obtain his prior authorization to adopt the strategy of admitting his guilt to the jury.

3.   The trial court improperly denied his claim of cumulative error of ineffective assistance of counsel.

4.   The trial court improperly determined that any errors in trial counsel's representation of him were harmless.

5.   His trial counsel was ineffective for failing to conduct meaningful investigation into the facts of the case, failing to object to alleged eyewitness identification, failing to object to uncharged bad acts, failing to have scientific testing conducted, and failing to call witnesses for the defense.

6.   His trial counsel was ineffective for failing to timely disclose to the trial court that a conflict of interest existed.

7.   The admission of the transcribed testimony of Winston Budd violated his confrontation rights.

8.   The prosecutor failed to disclose an agreement between the State and a key witness.

9.   His trial counsel was ineffective for failing to object to the prosecutorial misconduct during opening statements.

10.   His trial counsel was ineffective for failing to object to judicial misconduct.

11.   His trial counsel was ineffective for failing to object to erroneous jury instructions.

12.   His appellate counsel was ineffective for failing to challenge the reasonable doubt jury instruction.

13.   There were cumulative errors by his trial and appellate counsel warranting relief.

14.   His sentence was illegal.

15.   His trial counsel was ineffective for admitting his guilt to the jury.

ECF No. 50.

## II.   PROCEDURAL DEFAULT LEGAL STANDARD

Federal courts are barred from considering a state prisoner's habeas claim if the state courts denied his claim pursuant to an independent and adequate state procedural rule. See Edwards v. Carpenter, 529 U.S. 446, 452–53 (2000). "The Ninth Circuit has elaborated that a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." Collier v. Bayer, 408 F.3d 1279, 1284 (9th Cir. 2005) (internal quotation marks omitted). "If a state procedural rule is not well-established before a petitioner supposedly breaks the rule, then the rule cannot prevent federal review of the petitioner's federal claims." Id.

When a prisoner "procedurally defaults" a federal claim, judicial review is barred unless he can show either: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). To demonstrate cause, a petitioner must show that some external factor impeded his efforts to comply with the state's procedural rule. Maples v. Thomas, 565 U.S. 266, 280–81 (2012). Ignorance or inadvertence does not constitute cause. Murray v. Carrier, 477 U.S. 478, 491–92  (1986). To show prejudice, a petitioner bears the burden of showing not merely that the error created a possibility of prejudice, but that the error worked to his actual and substantial disadvantage, infecting the entire proceeding with constitutional error. Id. at 494; Bradford v. Davis, 923 F.3d 599, 613 (9th Cir. 2019).

"Generally, post-conviction counsel's ineffectiveness does not qualify as cause to excuse a procedural default." Ramirez v. Ryan, 937 F.3d 1230, 1241 (9th Cir. 2019) (citing Coleman v. Thompson, 501 U.S. 722, 754-55 (1991)). However, in Martinez, the Supreme Court created a narrow exception to the general rule that errors of post-conviction counsel cannot provide cause for a procedural default. Martinez v. Ryan, 566 U.S. 1 (2012). "Under Martinez, the procedural default of a substantial claim of ineffective assistance of trial counsel is excused if state law requires that all claims be brought in the initial collateral review proceeding . . . and if in that proceeding there was no counsel or counsel was ineffective." Ramirez, 937 F.3d at 1241 (citing Martinez, 566 U.S. at 17). But Martinez cannot excuse the procedural default of a substantive claim of trial-court error, appellate-level IAC claims, or "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." Martinez, 566 U.S. at 16; see Davila v. Davis, 582 U.S. 521, 529 (2017). To establish cause and

prejudice to excuse the procedural default of a trial-level ineffective assistance of counsel claim under <u>Martinez</u>, a petitioner must show that: (1) post-conviction counsel performed deficiently; (2) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different, and (3) the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. <u>Ramirez</u>, 937 F.3d at 1242 (internal quotations omitted).

## III.    DISCUSSION

Respondents argue that grounds 5 through 15 are procedurally defaulted given that (1) the state court found these claims to be barred under Nev. Rev. Stat. § 34.726, Nev. Rev. Stat. § 34.800, Nev. Rev. Stat. § 34.810(2), and Nev. Rev. Stat. § 34.810(1)(a)-(b)(2); and (2) the Nevada Supreme Court dismissed his appeal as untimely pursuant to Nev. Rev. Stat. § 34.575. (ECF No. 79 at 2–3.) Budd does not appear to dispute that grounds 5 through 15 are procedurally defaulted; rather, he contends that the motion to dismiss should be denied because (1) this court previously required all affirmative defenses to be raised in the initial responsive pleading, and (2) he can overcome any procedural default based on the ineffective assistance of his state post-conviction counsel under <u>Martinez</u>.[2]

Turning to Budd's first contention, this court previously ordered Respondents "to answer or otherwise respond to the amended petition," requiring them to "raise all potential affirmative

---

[2] Budd also argues that Respondents' motion to dismiss should be denied because (1) he properly exhausted grounds 5 through 15 or should be excused from doing so, and (2) equitable tolling excuses his procedural default. (ECF No. 83 at 9.) This court does not address the first argument because Respondents did not argue in their current motion to dismiss that grounds 5 through 15 are unexhausted. And regarding the second argument, equitable tolling applies to excuse an untimely filing—not a procedurally defaulted one.

defenses in the initial responsive pleading, including lack of exhaustion and procedural default." This court then stated that "[s]uccessive motions to dismiss will not be entertained." Although Respondents' current motion to dismiss is technically a successive motion to dismiss, this court finds that Respondents have not violated the underlying purpose of the rule, which is to prevent piecemeal defense arguments. Indeed, Respondents' current procedural default argument was not an available argument until after Budd returned to state court, Budd filed his second state post-conviction petition, and the state district court and state appellate court ruled on that new petition. In fact, Respondents could not have raised their current argument in their original motion to dismiss because that argument is premised on what the Nevada courts actually ruled regarding the application of the procedural bars to Budd's claims—rulings that did not exist until after Respondents' original motion to dismiss was already decided.

This court now turns to Budd's second contention: the ineffective assistance of his post-conviction counsel serving as cause to overcome the default of his claims. In ruling on Respondents' original motion to dismiss in this action, this court rejected Budd's argument that grounds 5 through 12 should be considered anticipatorily procedurally defaulted. This court explained that while Budd raised what are now grounds 5 through 12 in his initial state post-conviction petition, he did not raise them in his ultimate appeal to the Nevada Supreme Court. This court then explained the following:

> [G]rounds 5 through 12 would be procedurally defaulted because Budd did not raise those claims on appeal after the state district court denied the claims on their merits. Martinez applies only to the initial post-conviction proceedings in the state district court. Martinez specifically does not apply when the procedural default occurs because a petitioner does not appeal the denial of a claim. 566 U.S. at 16.

Accordingly, as this court previously explained, Martinez is not available to excuse the procedural default of grounds 5 through 12 because those claims were properly brought and

considered during Budd's first state post-conviction petition. The error that occurred here was by Budd's first post-conviction appellate counsel who failed to raise these claims on appeal. However, Martinez does not apply to post-conviction appellate counsel's errors. Martinez, 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings…."); see also Nguyen v. Curry, 736 F.3d 1287, 1295 (9th Cir. 2013). Accordingly, grounds 5 through 12 are dismissed as procedurally defaulted.

Similarly, regarding ground 13, this court previously explained that "Budd also raised a cumulative-error claim in his counseled first supplemental state post-conviction petition," but "on appeal he limited his cumulative-error argument to the four issues of ineffective assistance of counsel that he also raised in that appeal." Consequently, as was the case with grounds 5 through 12, ground 13 was properly raised by Budd's first state post-conviction counsel, so Martinez is unavailable to excuse the procedural default of ground 13. Ground 13 is dismissed as procedurally defaulted.

Turning to ground 14, Budd alleges that his three additional and/or consecutive life sentences for a deadly weapon enhancement in addition to the underlying three life sentences for [his] murder convictions are illegal. Because ground 14 is not a claim of ineffective assistance of trial counsel, Martinez is unavailable to excuse the procedural default of ground 14. Ground 14 is dismissed as procedurally defaulted.

Turning to ground 15, Budd alleges that he "should be entitled to relief based upon the admission of guilt to the jury by his trial counsel, with said statements denying [him] effective assistance of counsel, a fair trial, equal protection, due process of law, the presumption of innocence, and protective against cruel and unusual punishment under the Fifth, Sixth, Eighth, and Fourteenth Amendments." To the extent that ground 15 raises a claim of ineffective assistance of

trial counsel, this court finds that <u>Martinez</u> is potentially applicable to excuse the procedural default. However, because the analysis of cause and prejudice under <u>Martinez</u> to overcome the procedural default of ground 15 is necessarily intertwined with the merits of ground 15, the court defers a determination under <u>Martinez</u> until after an answer and reply have been filed.

**IV.    CONCLUSION**

**IT IS THEREFORE ORDERED** that Respondents' motion to dismiss **(ECF No. 79) is granted, in part,** as follows: (1) grounds 5 through 14 are dismissed as procedurally defaulted, and (2) ground 15 is procedurally defaulted, and the Court defers consideration of whether Budd can demonstrate cause and prejudice under <u>Martinez v. Ryan</u> to overcome the procedural default until after the filing of an answer and reply in this action.

**IT IS FURTHER ORDERED** that, pursuant to this court's reopening order **(ECF No. 70)**, Respondents have 60 days from the date of this order in which to file an answer to the remaining grounds in the second-amended petition. Budd will then have 60 days following the filing of an answer to file a reply.

**IT IS FURTHER ORDERED** that the Clerk substitute Jeremy Bean for Respondent Renee Baker.

**DATED:** <u>March 26, 2024</u>

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT COURT